UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GARY FRALICK,<br>Plaintiff,<br><br>v.<br><br>TOTAL QUALITY LOGISTICS,<br>Defendant. | Case No. 25-13272<br>Honorable Shalina D. Kumar<br>Magistrate Judge Curtis Ivy, Jr. |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF NO. 5) AND DISMISSING PLAINTIFF'S COMPLAINT**

## I. Introduction

Plaintiff Gary Fralick brings this action alleging age discrimination, retaliation, and wrongful discharge by his former employer, defendant Total Quality Logistics ("TQL"). ECF No. 1. TQL filed a motion to compel arbitration and dismiss this case. ECF No. 5. The Court took TQL's motion under advisement, finding a potential genuine dispute of fact over whether Fralick agreed to arbitration. ECF No. 10. The Court ordered limited discovery under Federal Rule of Civil Procedure 56(d) and permitted the parties to submit supplemental briefing before the Court determined if a

genuine factual dispute remained for trial. *Id.* After reviewing the parties' supplemental briefs, ECF Nos. 12, 13, the Court finds that no genuine issue of material fact exists as to whether Fralick agreed to arbitration. For the following reasons, the Court grants TQL's motion to compel and dismisses the complaint.

## II. Background

TQL onboards its new employees with electronic documents through Workday, a human resource management platform. One of the onboarding documents is an arbitration agreement between TQL and its employees providing that legal disputes which "arise out of or in any way relate to Employee's employment" will be decided by arbitration. ECF No. 12-2, PageID.211. TQL claims Fralick signed this agreement. Fralick disagrees, and claims in his declaration that he had no knowledge of the arbitration agreement, and that he didn't sign any documents. Furthermore, Fralick argues that even if he did click the button to sign the documents, that it did not manifest his assent to the Arbitration Agreement because he did not fully read or understand it. ECF No. 7-1, PageID.86.

## III. Analysis

### A. Standard of Review

"[W]hen asked to compel arbitration under a contract, a court determines whether the parties agreed to arbitrate their dispute." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021). TQL, as the party seeking to enforce the arbitration agreement, must prove the agreement's existence by the preponderance of the evidence. *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 798 (6th Cir. 2023); *Bank of America, N.A. v. First American Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016). Courts use the ordinary principles of the applicable state law governing the formation of contracts to assess the existence of a valid arbitration agreement. *Id.*; *see also GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Under Michigan law, "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *In re StockX Customer Data Breach Litigation,* 19 F.4th 873, 881 (6th Cir. 2021) (citing *AFT Mich. v. State*, 866 N.W.2d 782, 804 (Mich. 2015)). The parties agree that mutual assent to the arbitration agreement is the only element at issue here.

**B. Discussion**

Fralick argues that mutual assent was impossible here because he had no knowledge that he signed the agreement, and asserts he clicked through each document "without fully reading or understanding because" completion of the onboarding documents was a requirement to begin his employment. ECF No. 7, PageID.76. However, "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Allen v. Michigan State Univ.*, ___ N.W.3d ___, 2024 WL 4982523, at *10 (Mich. Ct. App. Dec. 4, 2024) (quoting *Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006)) (internal quotation marks omitted).

As mentioned, Fralick attests in his sworn declaration that he did not agree to the Arbitration Agreement because he was unaware of its existence. ECF No. 7-2, PagID.86, ¶¶ 1, 2. However, TQL provides evidence that Fralick was informed about the agreement on multiple occasions. First, TQL provides a copy of a letter it sent to Fralick on November 16, 2023, after he had accepted the position of Senior National Sales Executive. ECF No. 12-1, PageID.194. The letter makes clear that his offer of employment is contingent upon a background check, proper

work authorization, and satisfactory references, and it unequivocally states that he is "required to complete, sign, and return a TQL Non-compete/Non-disclosure Agreement and the *TQL Arbitration Agreement*" and warned that *"[f]ailure to meet these requirements will result in the retraction of this offer." Id.* (emphasis added). Next, TQL sent Fralick an email with the subject "TQL First Day Information" in which he is invited to visit their "Welcome Website" to review important documents and benefits information, including the Arbitration Agreement, prior to his first day of work. ECF No. 12-1, PageID.195. Finally, during Fralick's separation from TQL, Human Resources emailed Fralick on April 4, 2025, reminding him of the Non-Solicitation/Non-Compete agreements and the Arbitration Agreement he had signed, and stated "[i]f you have any questions regarding the Agreements described above, please contact the TQL Legal Department . . . ." ECF No. 21-1, PageID.197.

At his deposition, Fralick did not dispute that he received TQL's letter regarding his acceptance of their offer of employment. ECF No. 12-1, PageID.173. He also testified that the email containing links to important documents regarding his employment with TQL was sent to his personal email address. ECF No. 12-1, PageID.174. Although he could not recall

whether he visited the website referenced in the email, he testified that nothing prevented him from doing so. *Id.*

In further support of its position, TQL provides: (1) a copy of the signed agreement (ECF No. 5-1, PageID.41-48); (2) a declaration from a TQL Risk Manager, who has knowledge of the company's onboarding process and access to TQL's business records, explaining that new hires "are required to sign the Arbitration Agreement as a condition of [] employment" and that Mr. Fralick electronically signed the Agreement on November 27, 2023 (ECF No. 5-1, PageID.37-39), (3) a declaration from Alec Janson, an HR Systems Analyst II at TQL, stating that Fralick had to create a username and password in Workday and that no one had access to his username or password (ECF No. 12-2, PageID.201-207); and (4) an audit log with digital footprints showing that Fralick spent 10 minutes on this part of the onboarding process before reviewing, accepting, and submitting the arbitration agreement. *Id.*; ECF No. 12-2, PageID.220–221. TQL

provided an image of the screen Fralick would have seen when reviewing his documents in Workday, a screenshot of which follows.



**Review Documents** Review Documents for Onboarding for Gary Fralick (59636)

**Documents**

| | |
|---|---|
| Document | Dispute Resolution and Arbitration Agreement |
| Instructions | **CAUTION: This document affects your legal rights both during and after your employment with TQL.** |
| Signature Statement | By selecting the "I Agree" button below, I acknowledge that I have received this document; read it in its entirety; understand the terms, conditions and requirements the document places on me; have had the opportunity to consult with legal counsel regarding the terms of the document; and knowingly, voluntarily, and willfully agree to comply with the terms of the document. |
| I Agree | ☐ |
| Document | Non-Compete - Michigan |
| Instructions | **CAUTION: This document affects your legal rights both during and after your employment with TQL.** |
| Signature Statement | By selecting the "I Agree" button below, I acknowledge that I have received this document; read it in its entirety; understand the terms, conditions and requirements the document places on me; have had the opportunity to consult with legal counsel regarding the terms of the document; and knowingly, voluntarily, and willfully agree to comply with the terms of the document. |

Submit | Save for Later | Cancel

Janson also confirmed that "[t]he 'I Agree' button must be selected by the individual. In addition, the 'Submit' button must be selected and clicked by the individual before Workday will record that the individual has agreed to the agreement." ECF No. 12-2, PageID.203. Furthermore, the audit trail includes "time stamps, the IP address, and the user identification" and includes the exact date and time Fralick reviewed, accepted, and submitted the Arbitration Agreement and his other onboarding documents.

Indeed, the agreement bears Fralick's electronic signature,[1] a timestamp with his Workday username. ECF No. 5-1, PageID.48. The electronic signature on the Agreement corresponds with the timestamps for his electronic signatures on the other TQL onboarding documents, and Fralick does not contest that he took the actions necessary to add his signature to the other onboarding documents, *i.e.*, clicking the accept and submit buttons. ECF No. 12-1, PageID.185-86. ECF No. 12-2, PageID.220-21; ECF No. 13-2; *see*, *e.g., Townsend v. Pinewood Social, LLC,* 2024 WL 1642790, at *6 (M.D. Tenn. Apr. 16, 2024) (finding fact that employee did not deny signing nine other documents contemporaneously with the arbitration agreement to be compelling evidence that employee in fact signed the arbitration agreement).

Fralick's only evidence[2] that he had no knowledge of the agreement is his sworn declaration in which he asserts he "clicked through each

---

[1] Because Michigan has adopted the Uniform Electronic Transactions Act, Fralick's electronic signature establishes his acceptance of the agreement in the same way a written signature would. *See Hall v. Pac. Sunwear Stores Corp.*, 2016 WL 1366413, at *5 (E.D. Mich. Apr. 6, 2016).

[2] Fralick's supplemental brief contains what his attorney argues is a summation of the deposition of TQL's corporate representative. ECF No. 13. However, a certified transcript of this deposition was never provided to the Court. Because arguments are not evidence, the Court declines to

required document without fully reading or understanding" them. ECF No. 7-1, PageID.86. To the extent Fralick argues he does not remember signing the agreement or reading the policy, "[e]mployees may be bound by their signatures on an arbitration agreement even if they do not remember signing the agreement and even if they state that they never saw the policy." *Brown v. Heartland Emp. Servs., LLC*, 2020 WL 2542009, at *4 (E.D. Mich. May 19, 2020) (citing *DeOrnellas v. Aspen Square Mgmt., Inc.*, 295 F. Supp. 2d 753, 764 (E.D. Mich. 2003)); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("[O]ne who signs a contract which he has had an opportunity to read and understand, is bound by its provisions."); *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 125–26 (6th Cir. 2003) ("Michigan law presumes that one who signs a written

---

consider this portion of Fralick's supplemental brief in its decision. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence."). Additionally, Exhibit A—labeled Attorney Prepared Reponses—is attached in support of Fralick's supplemental brief. Fralick alleges this document was written by defense counsel and sent to TQL's representative to "guide his testimony." ECF No. 13, PageID.223; ECF No. 13-1. This document is unsigned, and there is no information anywhere in it that would allow the Court to determine its authenticity. The exhibit, and counsel's references to it, seem to be an attempt to discredit the deponent. However, because the Court never received the transcript of the deposition in question, it will also decline to consider this exhibit in its decision.

agreement knows the nature of the instrument so executed and understands its contents.") (quotations omitted).; *see also Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc.*, 195 N.W.2d 865, 868 (Mich. 1972) (internal quotation omitted) ("As in the case of one who signs without reading, it was his duty to [have] examined the contract, to know what he signed, and [the party seeking enforcement] cannot be made to suffer for this neglect on his part.").

The Sixth Circuit recently affirmed a similar case from this District. In *Tucker v. United Wholesale Mortg., Inc.*, the court found that a plaintiff failed to present a genuine issue of material fact as to the validity of an arbitration agreement, signed "through an online system which required him to create a password and profile," where he "simply states he did not recall signing an arbitration agreement and does not believe he would have done so without further explanation." 2024 WL 5629335, at *3 (E.D. Mich. July 10, 2024), *aff'd*, 2025 WL 1082316 (6th Cir. Apr. 10, 2025). "That bare assertion," the Sixth Circuit explained, "is precisely the kind of 'convenient memory lapse[ ]' insufficient to create a genuine factual dispute that precludes summary judgment." *Tucker*, 2025 WL 1082316, at *3 (quoting *Boykin v. Family Dollar Stores of Mich., LLC* , 3 F.4th 832, 839 (6th Cir.

2021)). *See also Downing v. Valicor Env't Servs., LLC*, 2023 WL 7285139, at *4 (E.D. Mich. Nov. 3, 2023), *reconsideration denied*, 2023 WL 8602265 (E.D. Mich. Dec. 12, 2023) (finding that a plaintiff's statements in a sworn affidavit that "I do not remember signing an arbitration agreement" and even "I would have never signed a document giving up my rights without further explanation or counsel" are "not sufficient to create a genuine issue of fact, warranting a trial on the issue of whether an arbitration agreement exists.").

Here too, Fralick's declaration and deposition testimony are insufficient to challenge the validity of the electronically approved arbitration agreements. In other words, even if Fralick does not remember signing the arbitration agreement and did not intend to agree to arbitrate, he can still be compelled to arbitrate if he signed an agreement to do so.

Without more, Fralick's argument that he did not agree to arbitrate his claims falls flat, and the Court finds that TQL has met its burden to show the validity of the arbitration agreement. *See Boykin*, 3 F.4th at 839; *Barnes v. G4S Secure Sols. (USA) Inc.*, 2025 WL 769970, at *10 (E.D. Mich. Mar. 11, 2025), *appeal docketed*, (6th Cir. April 11, 2025) ("By providing the purported arbitration agreements and accompanying declarations,

Corporate Defendants met their burden 'to produce evidence that would allow a reasonable jury to find that a contract exists.' ") (citing *Chaudhri v. StockX, LLC*, 19 F.4th 873, 881 (6th Cir. 2021))*; Johnson v. Kelly Servs., Inc.*, 2025 WL 2794496, at *5 (E.D. Mich. Oct. 1, 2025) ("The Court therefore finds Kelly has carried its burden in showing a contract existed between it and Johnson," even if "Johnson did not physically sign the Agreement," which "is not dispositive," where "he did in fact log into Kelly's system with a unique user ID and password and acknowledged the Arbitration Agreement on November 8, 2022.").

The Court finds that Fralick entered into an agreement with TQL to arbitrate. The Court also finds that the claims asserted in the complaint are within the scope of the signed arbitration agreement, that those claims are arbitrable, and that it must therefore enforce the arbitration agreement between the parties. *See Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005).

**C. Dismissal or Stay**

Because the Court agrees that Fralick's claims must be sent to arbitration, the only question remaining is whether to stay or dismiss these proceedings. In its motion to compel arbitration, TQL asks the Court to

dismiss the case and Fralick has not requested a stay. Thus, because the Court finds that all Fralick's claims "are subject to binding arbitration[,]" and Fralick does not otherwise ask for a stay, the Court will dismiss this action. *See Gavette v. United Wholesale Mortg., LLC,* 2024 WL 5364430, at *3 n.2 (E.D. Mich. Mar. 4, 2024), *reconsideration denied*, 2024 WL 5364429 (E.D. Mich. May 30, 2024), *aff'd*, 2025 WL 318224 (6th Cir. Jan. 28, 2025), *cert. denied*, 146 S. Ct. 361 (2025).

## IV. Conclusion

For the reasons discussed, the Court **GRANTS** TQL's motion to compel arbitration (ECF No. 5) and **DISMISSES** Fralick's complaint (ECF No. 1).

**IT IS SO ORDERED**.

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: September 23, 2026